UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| HEMP QUARTERS 605 LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>GOVERNOR KRISTI NOEM, IN HER OFFICIAL CAPACITY AS GOVERNOR OF TFIE STATE OF SOUTH DAKOTA; ATTORNEY GENERAL MARTY JACKLEY, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA,<br><br>Defendant. | 3:24-CV-03016-ECS<br><br>OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION |

Plaintiff brought this action against Kristi Noem, in her official capacity as Governor of the State of South Dakota, Marty Jackley, in his official capacity as Attorney General of South Dakota, and Casey Deibert, in her official capacity as State's Attorney for Hughes County, South Dakota. The parties ultimately filed a joint stipulation and moved to dismiss Casey Deibert as a named party, which the Court granted. Doc. 24. Plaintiff alleges that certain provisions of South Dakota House Bill 1125 (HB 1125), which takes effect on July 1, 2024, are unconstitutional. On June 27, 2024, this Court held a hearing on Plaintiff's Motion for Preliminary Injunction. At the hearing, Plaintiff offered live testimony from its owner, Brandi Barth, and its expert, Mark Krause. At the conclusion of the hearing, the Court took the matter under advisement. For the reasons below, Plaintiff's Motion for Preliminary Injunction, Doc. 8, is denied.

1

I.   PROCEDURAL BACKGROUND

On June 13, 2024, Plaintiff sued Defendants, seeking a declaratory judgment that (1) HB 1125 impermissibly violates the 2018 Federal Farm Bill, Pub. L. 115-334, as it in effect criminalizes the sale, shipping, transporting, and packaging of hemp products under South Dakota law while the same conduct is expressly legal under federal law, (2) HB 1125 violates the Commerce Clause of the United States Constitution, (3) HB 1125 constitutes a "regulatory taking" as it effectively bans the sale and distribution of all hemp products containing THC in violation of the 2018 Farm Bill, and (4) HB 1125 is void for vagueness and violates Plaintiff's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution. Doc. 1. Plaintiff's Complaint also seeks injunctive relief; Plaintiff requests a temporary restraining order and ultimately a preliminary and permanent injunction. Id.

The next day, this Court entered an Order denying, at that time, Plaintiff's request for a temporary restraining order as Plaintiff did not file a verified complaint or affidavit and it did not appear Defendants had been given notice of the action in accordance with Federal Rule of Civil Procedure 65. Doc. 2. Thereafter, returns of service for all Defendants were filed on June 18, 2024. Docs. 4, 5, and 6. Plaintiff then filed a Motion for Preliminary Injunction on June 20, 2024. Doc. 8. Counsel for Governor Noem and Attorney General Jackley filed a responsive brief on June 26, 2024. Doc. 23. This Court then held an evidentiary hearing on June 27, 2024.

I.   FACTUAL BACKGROUND

Under the Federal Controlled Substances Act, 21 U.S.C. § 801 et seq., "marijuana" and "marihuana" are both defined as "all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound,

manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin." 21 U.S.C. § 802(16)(A). "Hemp" is defined as "the plant Cannabis sativa L. and any part of the plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol ("THC") concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1). Marijuana and any part of the plant Cannabis sativa L. with a delta-9 THC concentration above 0.3 percent are Schedule I controlled substances. See 21 U.S.C. §§ 812, Schedule I, (c)(10), (17).

In 2018, Congress amended the Controlled Substances Act by passing a new Farm Bill, which decoupled hemp from the federal definition of marijuana. See 7 U.S.C. § 1639o(1); 21 U.S.C. § 802(16)(B)(i). The Farm Bill required the United States Department of Agriculture (USDA) to enact regulations and guidelines to administer a program for the production of industrial hemp. Hemp production may be administered by any state or Indian tribe that has a USDA-approved plan. See 7 U.S.C. §§ 1639p, 1639q. The State of South Dakota has a USDA-approved "Industrial Hemp Plan." Doc. 27.

Notably, the 2018 Farm Bill provided an express prohibition on state laws preventing the transportation or shipment of industrial hemp through the state:

> TRANSPORTATION OF HEMP AND HEMP PRODUCTS – No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 [7 U.S.C. 1639o et seq.] (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable.

Pub. L. No. 115-334, § 10114(b).

Further, the 2018 Farm Bill also allowed states to enact "more stringent" regulations of hemp production than what is set forth in federal regulations, providing as follows:

**(A)** **No preemption**

Nothing in this subsection preempts or limits any law of a State or Indian tribe that –

    (i)    regulates the production of hemp; and

    (ii)   is more stringent than this subchapter.

7 U.S.C. § 1639p(a)(3)(A).

On March 18, 2024, Governor Kristi Noem signed into law HB 1125. HB 1125 is set to take effect on July 1, 2024. In part, HB 1125 amends SDCL § 34-20B-1(3) to define the term "chemically derived cannabinoid" as follows:

> [A] chemical substance created by a chemical reaction that changes the molecular structure of any chemical substance derived from the cannabis plant. ***The term does not include:***
>
>     (a) Cannabinoids produced by decarboxylation from a naturally occurring cannabinoid acid without the use of a chemical catalyst;
>
>     (b) Non-psychoactive cannabinoids; or
>
>     (c) Cannabinoids in a topical cream.

HB 1125, Section 1 amending SDCL § 34-20B-1(3)(emphasis added). HB 1125 also criminalizes the following conduct:

No person or entity may:

> (1) Chemically modify or convert industrial hemp as defined in § 38-35-1, or engage in any process that converts cannabidiol into delta-8 tetrahydrocannabinol, delta-9 tetrahydrocannabinol, delta-10 tetrahydrocannabinol, or any other tetrahydrocannabinol isomer, analog, or derivative; or
> (2) Sell or distribute industrial hemp or an industrial hemp product that contains chemically derived cannabinoids or cannabinoids created by chemically modifying or converting a hemp extract

>A violation of this section is a Class 2 misdemeanor.

HB 1125, Section 2.

Plaintiff Hemp Quarters 605 is a business located in Pierre, South Dakota. Plaintiff alleges it "retails hemp plants and hemp-derived products in South Dakota." Doc. 10; Complaint, ¶ 10. Plaintiff's owner, Brandi Barth, testified at the evidentiary hearing that Hemp Quarters 605 LLC is solely a retail business, meaning Plaintiff sells hemp related products but does not produce or chemically modify any hemp products. Plaintiff estimates that "60 to 70% of Hemp Quarter's business is hemp derived products." Doc. 8; Affidavit of Brandi Barth, ¶ 10. Plaintiff employs six people. According to Plaintiff, it "risks losing its entire business if HB 1125 takes effect." Id. ¶ 12.

### III. MOTION FOR PRELIMINARY INJUNCTION

Rule 65(a) of the Federal Rules of Civil Procedure governs Plaintiff's Motion for Preliminary Injunction. The proper analysis of the preliminary injunction motion in this case is found in Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 731-32 (8th Cir. 2008) (enbanc) (reaffirming "that a party seeking a preliminary injunction of the implementation of a state statute must demonstrate more than just a 'fair chance' that it will succeed on the merits. We characterize this more rigorous standard ... as requiring a showing that the movant 'is likely to prevail on the merits.'"). That case requires this Court to make a "threshold finding" on whether Plaintiff will likely prevail on the merits of its claims before applying the remaining three factors of a preliminary injunction analysis: (1) the threat of irreparable harm or injury to the movant absent the injunction, (2) the balance between the harm to the movant and the harm that the injunction's issuance would inflict on other interested parties, and (3) the public interest.

Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981). As the moving party, Plaintiff bears the burden of proving all of these factors. CDI Energy Servs. v. West River Pumps, Inc. 567 F.3d 398, 402 (8th Cir. 2009)(citation omitted).

IV. **DISCUSSION**

    1. Standing

During the evidentiary hearing, Defendants orally argued for the first time that Plaintiff did not have standing to challenge the constitutionality of Section 2(1) of HB 1125. This section criminalizes the chemical modification or conversion of industrial hemp. Plaintiff's owner testified at the hearing that Plaintiff is a retailer of hemp products and does not chemically convert or modify any hemp products. Given this testimony, Defendants contend Plaintiff has no standing to challenge Section 2(1) of HB 1125 because there is no conceivable way it could be prosecuted as a retailer.

Because standing was raised the first time at the hearing, this Court ordered the parties to submit supplemental briefing on the issue, thus giving each side a fair chance to argue. These briefs were received and helpful to this Court. Docs. 29 and 30. After reviewing these briefs, it appears to this Court that Defendants do not contest Plaintiff's standing to challenge Section 2(2) of HB 1125, which prohibits the sale and distribution of chemically modified hemp. Instead, Defendants only allege Plaintiff lacks standing to challenge Section 2(1) of HB 1125, which prohibits the chemical modification or conversion of industrial hemp.

"Federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines.'" United States v. Hays, 515 U.S. 737, 742 (1995)(citation omitted). To have standing a party must establish (1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) the

6

likelihood the injury will be redressed by a favorable decision. C.Y. Wholesale, Inc. v. Holcomb, 2021 WL 694217, at * 5 (S.D. Ind. Feb 2021).

Defendants argue Plaintiff will never suffer any injury in fact as it is impossible for it to be prosecuted under Section 2(1) of HB 1125 because it is only a retailer of hemp products. In response, Plaintiff makes two arguments. First, Plaintiff contends under HB 1125 "if an employee places a CBD product on the shelves and it isomerizes into THC" the employee can somehow be prosecuted for chemically modifying or converting industrial hemp. Doc. 29 at 4. Second, Plaintiff argues that Commerce Clause jurisprudence allows it to have standing and relies on South Dakota Farm Bureau v. Hazeltine, 340 F.3d 583, 592 (8th Cir. 2003). According to Plaintiff, because HB 1125 interferes with interstate transportation of federally lawful hemp products it "has abundant standing to proceed with its challenge." Doc. 29 at 5.

This Court does not find Plaintiff's first argument regarding an employee placing a CBD product on a shelf persuasive. It is difficult to conceive of a prosecution for chemical conversion or modification of industrial hemp by placing a product on a shelf. Further, this Court will address below why is its unlikely Plaintiff will prevail at a merits trial on its interstate commerce arguments. As a result, this Court does not believe Plaintiff likely has standing to challenge Section 2(1) of HB 1125. There is no injury in fact. However, it is important to note the Court is only ruling at this time on a preliminary injunction motion. The Court will reserve a final ruling on standing following the conclusion of a merits trial.

2. Likelihood of Success

    A. Preemption

Plaintiff argues that the Supremacy Clause of the United States Constitution mandates a finding that HB 1125 is unconstitutional because the 2018 Farm Bill preempts state law. Specifically, Plaintiff contends the 2018 Farm Bill renders HB 1125 unconstitutional because of "conflict" preemption.

Conflict preemption exists where "state laws are preempted when they conflict with federal law, including when they stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Arizona v. United States, 567 U.S. 387, 399 (2012). Further, when assessing conflict preemption a court should engage in a "two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question of whether they are in conflict." Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 317 (1981)(citation omitted). When deciding whether any conflict exists, "a court's concern is necessarily with the nature of the activities which the States have sought to regulate, rather than on the method of regulation adopted." Id. In making this determination, a court "should not seek out conflicts...where none clearly exists." College Loan Corp v. SLM Corp., 396 F.3d 588, 598 (4th Cir. 2005)(cleaned up).

Additional basic tenets of federalism are instructive when deciding whether Plaintiff is likely to prevail on conflict preemption. When addressing preemption, a reviewing court is to begin "with the assumption that the historic police powers of the States are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Altria Grp., Inc. v. Good, 555 U.S. 70, 77 (2008). This assumption is especially important when Congress legislates in a field traditionally occupied by the States. Id. As a result, "when the text of a preemption clause is susceptible of more than one plausible reading," we must "accept the

reading that disfavors preemption." Id. (quoting Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (2005)).

The Eighth Circuit recently instructed that "[s]tate governments historically possess police power to protect public health and safety." R.J. Reynolds Tobacco v. City of Edina, 60 F.4th 1170, 1176 (8th Cir. 2023) (citing U.S. Const. amend. X)). This police power has extended to bans on selling tobacco products to preserve public health and safety. Id. Likewise, in this case, Defendants contend that a concern for the health and safety of the public was the impetus behind the passage of HB 1125.

When these fundamental principles are applied to this case, it is not likely Plaintiff will prevail on its conflict preemption argument. The Legislature's passage of HB 1125 falls squarely within the police powers traditionally reserved to states, as it is intended to promote the health and welfare of South Dakota's citizens.

Moreover, HB 1125 does not conflict with the 2018 Farm Bill. The 2018 Farm Bill, while including a preemption clause regarding interstate commerce, also includes an explicit denial of preemption. As noted above, under the heading "No preemption," Congress included an unambiguous statement declining to preempt state laws regulating hemp production by stating:

> **No preemption.** Nothing in this subsection preempts or limits any law of a State or Indian tribe that – (i) regulates the production of hemp; and (ii) is more stringent than this subchapter.

7 U.S.C. § 1639p. Indeed, the 2018 Farm Bill "says nothing about whether a state may prohibit possession or sale of industrial hemp." Duke's Inv. LLC v. Char, 2022 WL 17128976 at * 9

(Dist. Haw. Nov. 2022)(quoting C.Y. Wholesale, Inc. v. Holcomb, 965 F.3d 541, 546 (7th Cir. 2020)).

Since the 2018 Farm Bill specifically disavows preemption, says nothing about whether a state may prohibit the sale of industrial hemp, and in fact allows states to be "more stringent" in regulating hemp production, Plaintiff is unlikely to succeed on its preemption argument. See N. Va. Hemp and Ag. LLC v. Virginia, 2023 WL 7130853, at * 24 (E.D. Va. Oct. 2023)(ruling that "with respect to the regulation of the production and sale of hemp products containing varying amounts of delta-8 THC or other THC variants manufactured and sold in Virginia, SB 903 is not in conflict with the Farm Act either through theories of impossibility of obstacle preemption.").

B. Interstate Commerce

Plaintiff also alleges HB 1125 impermissibly interferes with interstate commerce. Likewise, Plaintiff also contends HB 1125 violates the Commerce Clause of the United States Constitution. According to Plaintiff, HB 1125 directly violates the 2018 Farm Bill's section providing that "[n]o State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products...." Pub. L. No. 115-334, § 10114(b).

Plaintiff contends "a truck driver transporting hemp extracts to Minnesota from a farm in Wyoming faces criminal sanction were his truck to be stopped by law enforcement in South Dakota." Doc. 8 at 16. During oral argument, Plaintiff argued the truck driver in this hypothetical scenario could be prosecuted under the new criminal provisions going into effect on July 1, 2024, and for distribution of an illegal substance under SDCL §§ 22-42-2 and 38-35-2. This Court disagrees.

10

As noted above, the new criminal provisions included in HB 1125 only criminalize the chemical modification or conversion of industrial hemp and the sale or distribution of industrial hemp. See HB 1125, Section 2. Defendants argue, and this Court agrees, that HB 1125 does *not* criminalize the mere possession of chemically modified industrial hemp. Thus, the new criminal provisions going into effect on July 1, 2024, pursuant to HB 1125 would not apply to a person merely possessing chemically modified industrial hemp. Likewise, for the same reason this Court does not believe SDCL §§ 22-42-2 and 38-35-2 would be implicated either in the scenario of a licensed truck driver posed by Plaintiff's hypothetical.

Notably, a district court in Hawai'i addressed a similar situation in Duke's Investments LLC v. Char, 2022 WL 17128976, at * 9 (Dist. Haw. Nov. 2022). In that case, the district court rejected a similar interstate commerce argument, finding the administrative rule at issue was generally concerned with the sale and distribution of prohibited hemp varieties but "[n]othing in HAR 11-37 prohibits a licensed producer from transporting hemp through Hawai'i." Id. at 13. The district court further explained as follows:

> Although Plaintiff argues HAR 11-37 clearly attempts to preclude the transportation (i.e. distribution) of hemp products containing delta-8 THC and delta-10 THC within Hawai'i, its argument fails. HAR 11-37 makes clear that it is precluding the distribution of hemp products containing delta-8 THC and delta-10 THC within Hawai'i. But, that does not mean hemp products containing delta-8 THC and delta-10 THC cannot be transported through Hawai'i. In fact, the 2018 Farm Act allows Plaintiff to import hemp products from licensed producers outside of Hawai'i, including hemp products containing delta-8 THC or delta-10 THC. What HAR 11-37 prevents Plaintiff from doing is selling or distributing hemp products containing delta-8 or delta-10 THC once those products arrive in Hawai'i. The 2018 Farm Act does not require the State of Hawai'i to allow Plaintiff to sell and/or distribute its hemp products and, therefore, that portion of HAR 11-37 does not conflict with the 2018 Farm Act's express preemption clause.

Id. at 13-14 (cleaned up).

The Seventh Circuit Court of Appeals also ruled in a similar fashion in C.Y. Wholesale v. Holcomb, 965 F.3d 541 (7th Cir. 2020). The plaintiffs in C.Y. Wholesale relied on the Commerce Clause and asserted that Indiana's ban on smokeable hemp "substantially burdened the interstate flow of goods…" Id. at 548. The Seventh Circuit disagreed, stating "this argument does not show sufficient promise of success on the merits to warrant a preliminary injunction." Id.

During oral argument, Plaintiff relied heavily on Bio Gen, LLC v. Sanders, 690 F. Supp. 3d 927 (E.D. Ark. 2023). In Bio Gen, the district court addressed industrial hemp legislation passed by the State of Arkansas. The Arkansas statute prohibited the transfer and possession of hemp, but also provided an exception allowing the "*continuous* transportation through Arkansas" of the hemp plant and its derivatives. Id. at 939, 940 (emphasis added). The term "continuous transportation" was not defined in the Arkansas legislation. Id. Because of this lack of a definition, the district court ruled the "Arkansas law criminalizes hemp derived products without an effective exemption for interstate commerce." Id. The district court reasoned an individual traveling through Arkansas from another state allowing hemp production could be subject to criminal liability if stopped by law enforcement in Arkansas before reaching their final destination. Id. Based on this reasoning, the district court found the plaintiff hemp growers and retailers demonstrated a likelihood of success on their claims and found the 2018 Farm Bill preempts the Arkansas legislation. Id.

This Court finds that Bio Gen is distinguishable from this case. Unlike the Arkansas statute at issue in Bio Gen, South Dakota has no similar statute only allowing for the "continuous" transportation of hemp through the state. HB 1125 criminalizes chemically modifying hemp and selling and distributing chemically modified hemp, but does not interfere

with interstate commerce. Thus, this Court believes Bio Gen is distinguishable from the situation presented here.

HB 1125 does not run afoul of the 2018 Farm Bill's express preemption clause regarding interstate commerce and likewise does not violate the Commerce Clause of the United States Constitution. Accordingly, this Court finds Plaintiff is not likely to succeed on this issue.

C. Regulatory Taking

Plaintiff alleges that HB 1125 constitutes an unconstitutional regulatory taking. (Compl. ¶¶ 62-67). As noted above, Plaintiff's owner testified during the hearing and in her affidavit that "60-70% of Hemp Quarters's business is hemp derived products." Affidavit of Brandi Barth, ¶ 11 Doc. 8. Accordingly, Plaintiff argues that much of its property, which is now legal, will be illegal on July 1, 2024, and this constitutes an unconstitutional regulatory taking.

Notably, Plaintiff's business is in Hughes County, South Dakota. This Court has been advised the Hughes County State's Attorney will not prosecute Plaintiff for any violations of HB 1125 during the pendency of this case, but the South Dakota Office of Attorney General has made no such agreement. Counsel for Defendants further advised the Court, however, that the South Dakota Attorney General's Office does not typically prosecute misdemeanor offenses such as those contained within HB 1125.

For its regulatory taking argument, Plaintiff urges the Court to apply the factors articulated by the Supreme Court in Penn Central Transp. Co. v. New York City, 438 U.S. 104, 124 (1978). In Penn Central, the Supreme Court instructed that a reviewing court is to examine (1) the regulation's economic impact on the claimant, (2) the extent to which it interferes with

13

distinct investment backed expectations, and (3) the character of the government action. Id. at 424.

Defendants counter by saying no such analysis is necessary. Instead, Defendants contend HB 1125 does not constitute an impermissible public taking because the prohibition on the sale or distribution of certain chemically modified hemp products is not for public use. Defendants contend that if property is not taken for public use the property owner does not have a right to receive just compensation, citing Bennis v. Michigan, 516 U.S. 442, 452 (1996) and Amerisource Corporation v. United States, 525 F.3d 1149 (Fed. Cr. 2008).

This Court believes it is unlikely Plaintiff will succeed on the merits of a regulatory taking claim. The Supreme Court instructed long ago that a "prohibition for purposes that are declared, by valid legislation, to be injurious to health, morals, or safety of the community cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit." Mugler v. Kansas, 123 U.S. at 623, 668-69 (1887). In Bennis, the Court also instructed that "the government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." Bennis, 516 U.S. at 452.

While this may seem unfair to Plaintiff, as inventory that is legal today will not be legal on July 1, 2024, "the [takings] inquiry remains focused on the character of the government action, not the culpability or innocence of the property holder." AmeriSource Corp., 525 F.3d at 1154. Indeed, during the hearing counsel for Defendants acknowledged Plaintiff was placed in an extremely difficult position given the passage of HB 1125 and change in the law. Precedent makes it clear, though, that this Court's inquiry should not be on the innocence of Plaintiff when making a determination on a regulatory taking claim.

This Court believes, however, that a state's police power, while expansive, is not without limits. But in the situation presented here, the State of South Dakota acted under its police power to enact legislation it believes to be in the interests of promoting the health and welfare of the citizens of the State of South Dakota. If this exercise of police power complies with the law and the Constitution, it is not this Court's responsibility to second guess or overturn such a decision. Accordingly, this Court concludes that Plaintiff is unlikely to succeed on its regulatory taking claim.

D. Vagueness

Plaintiff contends HB 1125 and South Dakota's hemp statutory scheme are void for vagueness. "The prohibition of vagueness in criminal statutes . . . is an 'essential' of due process, required by both 'ordinary notions of fair play and the settled rules of law.'" Sessions v. Dimaya, 584 U.S. 148, 155 (2018) (citations omitted). "The void-for-vagueness doctrine . . . guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes." Id.

First, Plaintiff contends through testimony of its expert, Mark Krause, that all hemp constitutes a "chemically derived cannabinoid" under the definition used in § 1(3) of HB 1125. Because Section 2(2) of HB 1125 criminalizes the sale and distribution of hemp containing "chemically derived cannabinoids" Plaintiff contends all hemp products could qualify as a prosecutable sale or distribution under the definition in Section 1(3) of HB 1125. Section 1(3), however, carves out from the definition of chemically derived cannabinoids "(a) Cannabinoids produced by decarboxylation from a naturally occurring cannabinoid acid without the use of a chemical catalyst; (b) Non-psychoactive cannabinoids; or (c) Cannabinoids in a topical cream product." Id.

15

This Court is not persuaded by Plaintiff's argument as it does not consider the complete definition of Section 1(3) of HB 1125, which exempts the three categories quoted above. Courts do not "construe the meaning of statutory terms in a vacuum. Rather, [they] interpret the words 'in their context and with a view to their place in the overall statutory scheme.'" Tyler v. Cain, 533 U.S. 656, 662 (2001) (quoting Davis v. Michigan Dept. of Treasury, 489 U.S. 803, 809 (1989)). Here, ordinary people are given fair notice of what is prohibited under the law.

Second, Plaintiff argues HB 1125 is vague as it criminalizes the possession of a "controlled substance analogue." According to Plaintiff, the definition of "controlled substance analogue" under South Dakota law potentially "bans all hemp products given hemp's near identical chemical makeup as Marijuana which is precisely what the 2018 Farm Bill attempted to change." Doc. 8-1 at 9. This Court also does not find this argument by Plaintiff to be persuasive.

Notably, the new misdemeanor criminal sections contained within HB 1125 do not reference the term "controlled substance analogue." The term "controlled substance analogue" is defined by SDCL § 34-20B-1(5), in pertinent part, as a substance intended for human consumption that has a "stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to, or greater than, the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in Schedule I or II." The term is also referenced in SDCL § 34-20B-3.1, which provides "[a] controlled substance analogue shall be treated as a controlled substance in Schedule I."

Schedule I lists THC as a controlled substance, but *specifically exempts* "that which occurs in industrial hemp as defined in § 38-35-1…" SDCL § 34-20B-14. Section 3(7) of HB 1125 amends the definition of Industrial Hemp Product in § 38-35-1 to include a laundry list of

16

"chemically derived cannabinoids" that are excluded from the definition of industrial hemp. But this amendment to the definition of Industrial Hemp Product does not make all industrial hemp illegal as Plaintiff alleges.

Reading Section 3(7) of HB 1125 in harmony with the entire new statutory scheme makes clear that South Dakota wanted to proscribe certain chemically modified hemp and marijuana chemical alternatives while still allowing for unaltered delta-9 hemp with a concentration of not more than 0.3% of THC. Based on this reading, "ordinary people have 'fair notice' of the conduct [HB 1125] proscribes." *Sessions*, 584 U.S. at 155 (citations omitted). Further, South Dakota is explicitly permitted under the 2018 Farm Bill to be "more stringent" in its regulation of the production of hemp. 7 U.S.C. § 1639p(a)(3)(A). As such, Plaintiffs are unlikely to succeed on the merits of their vagueness attack.

3. Threat of Irreparable Harm

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot fully be compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's LLC, 563 F.3d 312, 319 (8th Cir. 2009). Plaintiff alleges tremendous harm will occur if HB 1125 is allowed to go into effect. Specifically, Plaintiff claims it will be irreparably harmed three ways – through monetary losses, the threat of criminal prosecution, and deprivation based upon the likely success of the merits of its claims. Doc. 8; 22-23.

Based on the record before this Court, it seems clear Plaintiff's business will suffer to some extent when HB 1125 goes into effect. Plaintiff's owner testified 60 to 70 percent of the products it sells are hemp based, and that a $50,000 investment was made in renovating the building it rents. Other than this testimony, however, no detailed financial information was

17

provided for the Court to consider. While testimony was provided, in this Court's judgment it lacks enough evidence to determine the monetary harm Plaintiff will suffer is irreparable. Plaintiff is a relatively new business and will be able, as it currently does, to sell some products not governed by HB 1125 after July 1, 2024. See Duke's Investments LLC, 2022 WL at * 15 (declining to find irreparable harm when hemp business sought a TRO based on an allegation that 80 percent of its inventory was no longer able to be sold under a new administrative rule banning the sale of delta-8 THC and delta-10 THC).

Plaintiff places great weight on the harm being irreparable because it will succeed on the merits of its claims. As noted above, however, it is this Court's judgment that Plaintiff will not succeed on the merits of its claims. Further, the Hughes County State's Attorney's Office has agreed to not prosecute Plaintiff during the pendency of this lawsuit, which mitigates Plaintiff's argument about the threat of irreparable harm due to criminal prosecution. Accordingly, Plaintiff has not demonstrated irreparable harm justifying the entry of a preliminary injunction.

4. Balance of Harms and the Public Interest

"When an injunction is sought against government actors, the requirements that a movant establish the balance of equities and public interest favor injunctive relief merge." Northern Virginia Hemp and Agriculture, 2023 WL 7230853 at * 31 (citing Nken v. Holder, 556 U.S. 418, 435 (2009)). Here, Plaintiff alleges it will suffer great harm if HB 1125 is passed as its business will be greatly diminished. Plaintiff also alleges its employees and customers will be subject to potential criminal prosecution. In response, Plaintiff argues HB 1125 was passed with resounding support from the Legislature. During the hearing, Defendants' counsel argued HB 1125 passed with nearly unanimous support and cited Senate and House judiciary hearings where the Legislature discussed the need for the bill being in the public interest. Further, Defendants

contend combatting drug abuse is clearly a valid exercise of the State of South Dakota's police power.

This Court finds the balance of harms weighs in favor of Defendants and the public's interest is best served by denying Plaintiff's Motion for Preliminary Injunction. There is a strong public interest in protecting the health and welfare of the citizens of South Dakota. The decision on how best to advance that interest is left, under our system of government, to the elected individuals serving in the Legislature and the Governor. This Court must defer to those decisions unless they violate the law or the United States Constitution, which HB 1125 does not. Accordingly, this Court finds the balance of harms weighs in favor of Defendants and the public's interest is served by denying Plaintiff's Motion for Preliminary Injunction.

## CONCLUSION AND ORDER

Because the Plaintiff has not demonstrated either a likelihood of success on the merits or irreparable injury if HB 1125 remains in effect, and because the balance of equities and the public interest weigh in favor of Defendants, Plaintiff's Motion for Preliminary Injunction is denied.

ORDERED that Plaintiff's motion for preliminary injunction, Doc.8, is denied.

DATED this 29 day of June, 2024.

BY THE COURT:

ERIC. C. SCHULTE
UNITED STATES DISTRICT JUDGE